Williams, C. J.
The common law rule, that an assignee for the benefit of creditors succeeds only to the rights of the assignor in the property at the time of the assignment, and takes it subject to all equities and liens which could have been asserted against it had the assignment not been made, is not without important exceptions, in this state, growing out of our legislation. It is well settled, that chattel mortgages which fail to conform, in any substantial requirement, *497 to the provisions of the statute relating to their execution, or registry, though good against the mortgagor and the property while it is retained by him, are ineffectual as liens upon the property after it has passed into the hands of an assignee for the benefit of the creditors of the mortgagor, under an assignment made subsequent to the execution of the mortgage. Hanes v. Tiffany, 25 Ohio St. 549; Blandy v. Benedict, 42 Ibid. 295.
In Hanes v. Tiffany, it was contended in behalf of the mortgagee, that, as the mortgage was good against the mortgagor, it was also good against the assignee for the benefit of his creditors; for the assignee, it was claimed, stood in no better situation than the assignor. In disposing of this contention, White, J., in the opinion of the court, said: “ The correctness of this position at common law is admitted; but not so under the statute.” It was held in Blandy v. Benedict, that where the affidavit, which the statute requires the mortgagee to make on his chattel mortgage before filing the same with the proper officer, was defective in the statement of the liability the mortgage was given to secure, but the mortgage was otherwise properly executed and filed, and the mortgagor subsequently made an assignment of his property for the benefit of his creditors, the mortgage was not entitled to priority over the general creditors under the assignment, although the assignment contained a provision expressly excepting from its operation, all liens ; and, though the mortgage was good as against the mortgagor, constituting a valid lien while the property remained in” his possession. With respect to the purpose of that provision of the assignment which excepted all liens from its operation, and its effect upon the assignment and the rights of the creditors, it is said in the opinion by McIlvain, J.: “We think there can be no doubt that the intention was to secure the mortgagees the full amount of their liens to the extent that such liens were valid as against the assignor. Can such purpose be accomplished by such means ? We think not. Undoubtedly these mortgages were valid as against the assignor, but void as against his creditors.”
*498 These decisions rest- upon the provisions of the chattel mortgage statute, which enacts, that such mortgages, when not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the property mortgaged, shall be void as against the creditors of the mortgagor, unless the mortgage or a true copy, with the necessary affidavit of the mortgagee thereon, as prescribed by the statute, be deposited with the proper officer. The right of the creditors to subject the property to the payment of their claims, is in no way affected by such void mortgages, and an assignment of the property by the mortgagor for the benefit of his creditors, clothes the assignee, not only with the assignor’s title to the pioperty, but also, with all the rights of the creditors with respect to it. As was said in Blandy v. Benedict, “By the assignment, the rights of the creditors passed to the assignee as matter of law,” and they are, thereafter, to be worked out through him, in the administration of his trust. Up to the time of the assignment, the creditors might seize the property by attachment, or other process, and their liens, so acquired, would undoubtedly be superior to such a mortgage; and, in the language of McIlvain, J., in Blandy v. Benedict, “ Every right which the creditors might have asserted against the propertj1- before the assignment, the assignee is bound to secure for their benefit after the assignment.” The assignment, therefore, as effectually fixes the rights of the creditors to the property, and establishes their priority over the mortgage, as if they had taken the property on execution or attachment. This operation of the assignment, upon the rights of the creditors, must, of course, be the same, whether the property embraced in it be real, or -personal, or both; and hence, upon the principle established by the cases referred to, the creditors are entitled to priority over a mortgage of real property which has not been deposited for record when the assignment is made, unless, under our recording acts, the effect of the failure to deposit the mortgage for record, is substantially different from that which results from the like failure to properly file a chattel mortgage. Is there a substantial difference in this *499 respect ? The statute regulating the execution and registry of mortgages of real property, does not, in terms, declare that such mortgages, when not deposited for record, shall be void as against the creditors of the mortgagor; but it does enact, that they shall be recorded in the office of the recorder of the county in which the mortgaged premises are situated, and, that they shall take effect from the time the same are delivered to the recorder of the proper county for record. Mortgages of real property, which are not so filed for record, like unfiled chattel mortgages, are good between the parties; and, while the latter are declared void as to creditors, the former do not take effect as to third persons, until they are filed for record. A mortgage which has no effect, is no better than a void one; for, a void mortgage is simply without effect.
It has been held, by this court, as often as the question has been presented, and it has been made in a variety of forms, as well as in numerous cases, that mortgages of real property have no effect, either at law or in equity, until they are delivered to the recorder of the proper county for record, as against third persons acquiring a legal interest in, or lien upon the property. In Stansell v. Roberts, 13 Ohio 148, it was decided, that as between a prior unrecorded mortgage and a subsequent one which was recorded, the latter had priority. In the cases of Mayham v. Coombs, 14 Ohio 429; Jackson v. Luce, 14 Ohio 514; White v. Denman, 16 Ohio 60; Holliday v. The Bank, 16 Ohio 533; White v. Denman, 1 Ohio St. 110, and Fosdick v. Barr, 3 Ohio St. 471, it was held, that an unrecorded mortgage, or one defectively executed, so as not to be entitled to record, was not entitled to preference over a subsequent judgment recovered against the mortgagor. It was not doubted that such mortgages were good as against the mortgagor, and, but for the statute, would have been entitled to preference over the judgments, under the general rule that the lien of a judgment attaches only to the interest which the debtor has in the property at the time of its rendition. But, as is said in the last case cited above, while such unrecorded instruments are good and effectual *500 between the parties, they are “ entirely nugatory as to third parties, both at law and in equity, until they are recorded.” It was held in Bloom v. Noggle, 4 Ohio St. 45, that a valid agreement in writing for a mortgage on real property, gave to the party entitled to the mortgage no priority over the general creditors of the other contracting party, under an assignment made by him for the benefit of his creditors after the execution of the agreement for the mortgage. And in Erwin v. Shuey, 8 Ohio St. 510, this court held that a mortgage of lands, defective because not under seal, but otherwise properly executed and recorded, created no lien in favor of the mortgagee, as against an assignee, under a general assignment subsequently made by the mortgagor for the benefit of his creditors, although the assignee had notice of the mortgage at the time of the assignment.
These cases, like those of Hanes v. Tiffany, and Blandy v Benedict, supra, afford instances of the exceptions, which obtain in this state, to the rule of the common law, that an assignee for the benefit of creditors takes the property assigned subject to all equities which could have been enforced against it in the hands of the assignor at the time of the assignment; and it is shown by them, that the exceptions grow out of the similiar effect given to the recording statutes applicable to the different classes of mortgages. In Bloom v. Noggle, Ranney, J., speaking of the effect of the statutes upon the rules of the common law, and the rights of the parties before, and since their enactment, said: “ If the case could be decided upon general principles, the right of the complainants to the relief they seek would seem to us as clear as it now seems clear that it cannot be given consistently with statutory provisions bearing upon the questions stated. Upon general equity principles, unaffected by statutory provisions, an agreement in writing for a mortgage, is a valid contract, fixing a specific lien upon the property agreed to be mortgaged, and will be specifically enforced by a court of chancery, against the party and all subsequent purchasers from him with notice, as well as against any general assignment, either voluntary or by operation of law, for *501 the benefit of his creditors. These principles may be regarded as well settled, and the jurisdiction of courts of equity in such cases has been exercised, without question, from a very early period, as is abundantly shown by the cases cited in argument. It rests upon the same foundation and has all the reasons for its support, that exists in favor of a like interference upon contracts for the execution and delivery of absolute deeds. As between the parties to such a contract, the agreement is valid and effectual in this state, and we see no reason to doubt that a specific performance may be enforced by our courts of chancery, in the same manner and to the same extent, that such relief has been given in England, and other states of the Union. But while these principles and remedies have their full application and effect, as between the parties to such a contract, we are clear in the opinion that no effect whatever can be given to it consistently with section 7 of the act of June 1, 1881, (Swan’s Revised Statutes, 310), to provide for the proof, acknowledgment, and recording deeds, etc., as against third persons who have subsequently acquired the legal title to, or lien at law upon, the property to which it relates. By the positive provisions of that section, as construed by the declaratory act of March 16, 1838, (Swan’s Revised Statutes, 311), and repeated decisions of this court, as against such third persons, mortgages have no effect either at law or in equity until delivered to the recorder of the proper county for record.” “ To give them any effect before,” says the learned judge, “ as against the persons intended to be protected by the statute, would be to repeal it. It was not made for the mortgagor, and therefore, as to him, the record of the mortgage was wholly unnecessary; but it was designed to protect third persons who might acquire legal interests in, or leins upon, the property. As to them, the record was made conclusive; and they are only bound to regard such mortgage liens as the record discloses at the time their rights accrue. The principle dedueible from all the cases is, that the legal rights of such persons cannot be displaced, at the instance of the holder of a prior unrecorded mortgage, or contract for a mortgage, al-. *502 though acquired with notice of such mortgage, or of the existence of such contract; the object of the law being to avoid all the vexed questions of notice, actual or constructive, in determining priorities of lien.”
We have quoted at some length from the opinion in Bloom v. Noggle, because we thinlc the case before "us comes within the principle established by it, and subsequently approved in Erwin v. Shuey, supra, which is, that the essential condition to the validity of a mortgage of real property, as against an assignee of the mortgagor for the benefit of his creditors, is, that the mortgage shall be deposited for record with the proper officer, before the assignment takes effect. It can make no difference, in the application of the principle, whether the want of such record, or deposit for record, results from the defective execution of the mortgage, by reason of which it is not entitled to record, or from the voluntary withholding from the record, of a mortgage properly executed.
There can be no doubt that an assignment for the benefit of creditors, operates as a conveyance, and not as a mere power. Nothing remains in the assignor but the incidental right to discharge the trust by the payment of the debts, or to claim whatever residue may remain after the debts are paid. That the deed of assignment, when properly executed, clothes the assignee with the legal title, is settled by the cases just referred to, and, according to those decisions, against the legal title thus acquired, the prior unrecorded mortgage cannot prevail. If the conveyance were made directly to the creditors, for the payment or security of their debts, it would not be claimed that either their title, or their rights under the conveyance, could be displaced, or affected by a prior unrecorded mortgage, nor by its subsequent record; and their rights, we apprehend, are none the less when the conveyance is made to the assignee for their benefit. The subsequent record of the mortgage, could, of course, give it no validity as against rights which had been acquired before.
We therefore hold, that a mortgage of real property, which has not been deposited with the recorder of the proper county *503 for record, before an assignment of the property by the mortgagor for the benefit of his creditors takes effect, is not a valid lien upon the property, as against the assignee or the creditors, nor does it become so by being subsequently recorded.
It has been suggested, though it is not so contended by counsel in the argument, that the assignment lost its priority, because the deed of assignment was not deposited for record with the recorder of the county, while, soon after it was filed with the probate court, the mortgage was duly recorded. The record now under review, does not show that the deed of assignment was not filed with the recorder. But assuming that it was not, does the result suggested follow ?
The consequences of the failure to record deeds, differ from those attending a like failure with respect to mortgages. As to deeds, the statute simply declares that until recorded, or filed for record, they “shall be deemed fraudulent, so far as relates to a subsequent bona fide purchaser, having at the time of purchase no knowledge of the existence of such former deed.” If it were conceded, though we do not deem it necessary to so decide, that by recording his mortgage, after the deed of assignment was properly filed in the probate court, the mortgagee, Betz, then became a subsequent bona Ude purchaser, within the meaning of the statute, it was still essential, in order to bring him within its protection, that at the time of filing his mortgage for record, he had no knowledge of the assignment; and this, it is incumbent upon him to show. He makes no claim of that kind in his answer, and the record of the courts below is silent on the subject.
But, is it essential to the validity of an assignment of real property, as to third persons, that the deed should be recorded in the office of the county recorder? As a deed conveying real property, it falls within the class of instruments whose record is provided for by section 4134 of the Revised Statutes, and is subject to its provisions, unless controlled by other statutory regulations made especially applicable to such assignments. The whole subject of assignments by insolvent debtors for the benefit of their creditors, is specifically provid *504 ed for, and regulated, in detail, by chapter 4 of title II. of the Revised Statutes. By the first section of that chapter, (section 6335,) it is made the duty of every assignee, within ten days after the delivery of the assignment to him, to cause it to be filed in the probate court of the county in which the assignor resided at the time of its execittion; and it enacts, that every “ such assignment shall take effect only from the time of its delivery to the probate judge, and the exact time of such delivery shall be indorsed thereon by the probate judge, who shall immediately note the filing on the journal of the court; and it may be delivered by the assignor to the probate judge, either before or after its delivery to the assignee.” Upon the filing of the assignment, the assignee is required to enter into a bond for the faithful performance of his duties; and from that time, the administration of the assignment becomes a pending proceeding in the probate court, and so continues, until the trust is fully executed. Notice that the assignee has qualified, is required to be given by publication, and notice must also be given by publication or otherwise, of various steps in the proceedings. The probate court is invested with complete jurisdiction of the whole subject-matter of the assignment, and of its administration to final completion. Its records, equally with those of the courts of common pleas, and of the records of deeds and mortgages, are constructive notice of what they are required to contain. It is a rule of construction, that special statutory provisions for particular cases, operate as exceptions to general provisions which might include the particular cases. The object of those provisions of section 6335, to which we have referred, was not, we think, simply to provide when, and how, assignments should become operative as between the parties to the instrument. They were not necessary for that purpose. As between them, the conveyance is complete without a compliance with those provisions. Their design, evidently was, to fix definitely, a time from which such instruments should take effect as to all persons. And, it having been so specially enacted, that assignments for the benefit of creditors shall take effect from the time of their delivery *505 to the probate judge, the courts are not at liberty to annex, as a further condition to their taking effect, that they shall also be deposited with the recorder of deeds. This conclusion is sustained by the decision of the Supreme Court of Massachusetts in Guildford v. Childs, 22 Pick. 434, which involved the interpretation of statutes very similar to ours.

Judgment affirmed.